**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| KEVIN BROWN,<br><br>*Plaintiff,*<br><br>v.<br><br>STEELCOTE GRATIOT, LLC, et al.,<br><br>*Defendants.* | No. 4:26-cv-136-MAL |

**Memorandum and Order**

Defendants Steelcote Gratiot, LLC; Arcturis, Inc.; and Holland Construction Services have each filed motions to dismiss Plaintiff Brown's Complaint. Docs. 20, 22, 24. The Court **GRANTS** each of these motions to dismiss.

## I. Background

Brown is in the market to rent an apartment in St. Louis. Doc. 1 at ¶¶ 35, 45. He uses a wheelchair. *Id.* at ¶ 6. During his rental search, Brown visited an apartment complex called The Edwin on Grand ("the Property"), located at 3534 Gratiot Street, St. Louis, Missouri. *Id.* at ¶¶ 2, 35. Brown alleges that multiple facilities in the public and common-use areas—including the highest operable controls for the lobby coffee machine, lounge coffee machine, pet washing station, mailboxes, and emergency phone—were too high for him. *Id.* at ¶ 48. Brown also alleges on information and belief that the Property's residential units lacked accessible bathrooms, kitchens, light switches, electrical outlets, thermostats, and environmental controls. *Id.* at ¶¶ 49–50. These accessibility barriers deterred Brown from renting an apartment at the Property. *Id.* at ¶ 44. But Brown intends to return to the Property to pursue a potential rental once the accessibility barriers are remediated. *Id.* at ¶¶ 43, 45.

Brown sued the Defendants—Steelcote Gratiot, LLC (the owner); Arcturis, Inc. (the architect); and Holland Construction Services (the general contractor)—on one count of violating the Fair Housing Act disability access requirements codified at 42 U.S.C. §§ 3604(f)(2)–(3). Doc. 1 at ¶¶ 13, 15, 17, 58. Brown seeks damages, declaratory relief, and injunctive relief. Doc. 1 at 12–13. The Defendants have each filed motions to dismiss. Docs. 20, 22, 24.

## II. Whether Brown Has Standing to Bring this Lawsuit

Defendants challenge Brown's standing to bring this lawsuit. Doc. 21 at 3; Doc. 23 at 7; Doc. 25 at 6–7. Per Article III of the U.S. Constitution, the Court must have standing to hear this case. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the motion-to-dismiss stage, the plaintiff must plead facts demonstrating each element of Article III standing. *Id.* "Standing [] is a jurisdictional requirement, and thus can be raised by the court sua sponte at any time during the litigation." *Pucket v. Hot Springs School Dist. No. 23-2*, 526 F.3d 1151, 1156 (8th Cir. 2008). The Court "must independently satisfy [itself] that the Article III requirement that a case or controversy be presented is satisfied." *McNaught v. Nolen*, 76 F.4th 764, 769 (8th Cir. 2023).

### A. Legal Standard

Under Article III of the Constitution, a federal court must have standing to adjudicate a case before it. *TransUnion, LLC. v. Ramirez*, 594 U.S. 413, 423 (2021). Standing has three elements: injury-in-fact, causation, and redressability. *Id.* In this case, the argument is entirely about injury-in-fact. *See* Docs. 21 at 6, 23 at 6, 25 at 7.

To have standing, a plaintiff must have suffered an injury-in-fact, meaning an injury that is "concrete" and not "abstract." *TransUnion*, 594 U.S. at 424. But "concrete" does not necessarily mean "tangible." *Id.* at 425. Some intangible injuries, such as reputational harm, have traditionally been recognized as harms appropriate to be remedied in court. *Id.*

To determine whether an intangible injury is concrete, a court must consult two main sources: tradition and legislative judgment. *Spokeo*, 578 U.S. at 340. With respect to tradition, a court must consider whether "an alleged intangible harm has

a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 341. With respect to legislative judgment, "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.* Consequently, "[Congress's] judgment is also instructive and important." *Id.*

**B. Application of Law to Fact**

Defendants argue that Brown lacks standing to pursue any relief because he never suffered a concrete injury. Doc. 21 at 6–7; Doc. 23 at 7; Doc. 25 at 6–7. The Court agrees with Defendants..

**1. Brown did not suffer the concrete injury of discriminatory treatment.**

Brown did not suffer the concrete injury of discriminatory treatment. To determine whether Brown has satisfied the injury-in-fact element of Article III standing, the Court must first determine whether discriminatory treatment is a concrete injury. Second, the Court must determine whether Brown suffered discriminatory treatment.

**a. Discriminatory treatment is a concrete injury.**

Discriminatory treatment is a concrete injury that has traditionally been remediated by American courts. The Supreme Court implied as much in *TransUnion*. 594 U.S. at 425–26 (implying that "discriminatory treatment" is a traditionally recognized "concrete, *de facto*" injury). But the Supreme Court did not specify what counts as discriminatory treatment. That is where Congress's judgment, as reflected in the Fair Housing Act's disability provisions, is instructive. *See Spokeo*, 578 U.S. at 341; 42 U.S.C. §§ 3604(f)(3)(C).

**b. Brown did not suffer discriminatory treatment.**

Brown did not suffer discriminatory treatment as defined in 42 U.S.C. § 3604(f)(3)(C). Section 3604(f)(3)(C)(i) states that discrimination includes "a failure to design and construct" a dwelling so that "the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons."

Section 3604(f)(3)(C)(iii) also includes various accessibility requirements for the residential units.

Brown has not adequately alleged that he suffered discrimination under 42 U.S.C. § 3604(f)(3)(C). Brown's allegations regarding facilities within public and common use areas (the highest operable controls for the lobby coffee machine, lounge coffee machine, pet washing station, mailboxes, and emergency phone) do not suffice. Doc. 1 at ¶ 48. Section 3604(f)(3)(C)(i) refers to inaccessible common use and public use areas. The regulations define common use areas as "rooms, spaces, or elements inside or outside of a building . . . includ[ing] hallways, lounges, lobbies, laundry rooms, refuse rooms, mail rooms, recreational areas and passageways between buildings." 24 C.F.R. § 100.201. The examples listed in the regulations are all rooms, spaces, or passageways. Thus, aspects and items *within* those areas—including coffee machines, portions of coffee machines, and portions of mailboxes—do not count as "common use areas" within the meaning of 42 U.S.C. § 3604(f)(3)(C)(i). Nor are they "public use areas," 42 U.S.C. § 3604(f)(3)(C)(i), which the regulations define as "interior or exterior rooms or spaces[.]" 24 C.F.R. § 100.201.[1] The allegedly inaccessible facilities are not "rooms or spaces." *See id.*; Doc. 1 at ¶ 48.

Courts applying § 3604(f)(3)(C)(i) appear to be generally in agreement in that they seem to presuppose that the provision applies to rooms or spaces only. *See, e.g.*, *United States v. Edward Rose & Sons*, 384 F.3d 258, 261–63 (6th Cir. 2004) (stair landing outside front entrance is common area); *Fair Housing Council v. Village of Olde St. Andrews*, 250 F.Supp.2d 706, 720 (W.D. Ky. 2003) (addressing whether steps are a common area); *Sporn v. Ocean Colony Condo. Ass'n*, 173 F. Supp. 2d 244, 252–53 (D.N.J. 2001) (addressing whether adult lounge is accessible, and assuming this is a common area). Thus, Brown has failed to allege discrimination under 42 U.S.C. § 3604(f)(3)(C)(i).

---

[1] After the Supreme Court's decision in *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024), courts no longer give binding deference to regulatory interpretations of statutes. But courts may "pay 'careful attention'" to regulatory interpretations. *Minn. Telecom. Alliance v. FCC,* 175 F.4th 905, 921 (8th Cir. 2026) (quoting *Loper Bright*, 603 U.S. at 412–13) (cleaned up). The Court sees no reason to disagree with the regulatory definitions.

Brown's allegations regarding residential unit deficiencies fail because he pleads them on information and belief. Doc. 1 at ¶¶ 49–50. Information-and-belief allegations are acceptable only "where the proof supporting the allegation is within the sole possession or control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible." *Ahern Rentals v. EquipmentShare.com*, 59 F.4th 948, 954 (8th Cir. 2023). Neither is true here. There is no reason why proof of residential unit deficiencies should be within the sole possession or control of Defendants. After all, Brown visited "one or more units." Doc. 1 at ¶ 35. Thus, he should have been able to identify deficiencies inside the residential units. Nor has Brown provided supporting factual details that render his allegations plausible. *See generally* Doc. 1. Thus, Brown's allegations regarding residential unit deficiencies cannot support his discrimination claim.

Because Brown has not alleged discriminatory treatment as defined by Congress in 42 U.S.C. § 3604(f)(3)(C), Brown has not alleged a concrete injury-in-fact. *See Spokeo*, 578 U.S. at 341. He therefore lacks Article III standing to pursue his Fair Housing Act claim.

## Conclusion

Defendants' motions to dismiss, (Docs. 20, 22, 24), are **GRANTED**. Brown's Motion for Leave to File Notice of Supplemental Authority, Doc. 34, is **DENIED** as moot.

**SO ORDERED,**

This 24th day of November, 2026.

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE